UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA DUSSAN PINEDA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:25-cv-01970-DC-JDP (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>(Doc. No. 3) |

This matter is before the court on Petitioner Carolina Dussan Pineda's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her ongoing immigration detention. (Doc. No. 1.) Having considered the parties' briefing (Doc. Nos. 3, 8, 10), the court will grant Petitioner's motion for a temporary restraining order and preliminary injunction.[1]

## BACKGROUND

**A.  Factual Background**

On July 29, 2022, Petitioner, a native and citizen of Colombia, entered the United States

---

[1] Respondents note in their opposition to the pending motion that "if this Court grants Petitioner's request for a temporary restraining order, Respondents do not oppose this Court converting Petitioner's motion for a TRO into a motion for a preliminary injunction." (Doc. No. 8 at 2 n.2.) Accordingly, the court treats Petitioner's motion as seeking a temporary restraining order and preliminary injunction.

1

1  without inspection and was apprehended by United States Border Patrol.[2] (Doc. Nos. 1 at ¶ 2; 8-3
2  at 2.) Petitioner expressed a fear of being returned to her native country to a Border Patrol Agent.
3  (Doc. No. 8-3 at 2.) The United States Department of Homeland Security ("DHS") processed
4  Petitioner for expedited removal and placed her into the United States Immigration and Customs
5  Enforcement's ("ICE") custody. (Doc. Nos. 8 at 2; 8-3 at 1, 3.)

6       Sometime after, a DHS asylum officer interviewed Petitioner and found she did not have a
7  credible fear. (Doc. Nos. 8 at 2; 8-1 at 3.) Petitioner then requested an immigration judge review
8  DHS's credible fear determination. (*Id*.) On August 22, 2022, Petitioner was released from
9  custody. (Doc. Nos. 1 at ¶¶ 2, 38; 8 at 2.) Petitioner alleges she was released under section
10 212(d)(5) of the INA, which corresponds to 8 U.S.C. § 1182(d)(5), and under 8 C.F.R. § 212.5,
11 (Doc. No. 10 at 4), which provides for discretionary parole for "urgent humanitarian reasons or
12 significant public benefit." 8 U.S.C. § 1182(d)(5). Respondents do not affirmatively contest that
13 allegation, and instead state that "DHS released [P]etitioner from custody on interim parole."
14 (Doc. No. 8 at 2.)

15      As part of her release, Petitioner was provided a I-220A form, which is an order of
16 release on recognizance under INA § 236 (8 U.S.C. § 1226), and a copy of a notice to appear in
17 immigration court. (Doc. No. 1 at ¶ 5.) The I-220A form imposed a condition on Petitioner that
18 she not violate any local, state, or federal laws or ordinances. (*Id*.) Neither Petitioner nor
19 Respondents have provided the court with a copy of Petitioner's I-220A form.

20      Following her release, Petitioner moved to San Jose, California to reside with her
21 significant other and her ten-year-old son.[3] (Doc. Nos. 1 at ¶ 9; 3 at 4.)

22      On August 23, 2022, an immigration judge conducted a review of DHS's credible fear

---

[2] In her petition, Petitioner alleges she entered the United States without inspection on August 22, 2022. (Doc. No. 1 at ¶ 2.) However, based on the court's review of the record, this allegation appears to be inaccurate because the parties' briefing confirms she entered the United States without inspection on July 29, 2022. (Doc. Nos. 8-3 at 1; 10 at 2.)

[3] Petitioner also lists her home as Hayward and Bakersfield, California. (Doc. Nos. 1 at ¶ 48; 3 at 6.) However, based on the court's review of the entire record this information appears to be inaccurate because Plaintiff's reply confirms she resides in San Jose, California. (Doc. No. 10 at 4.)

2

1 determination. (Doc. No. 8-1 at 3.) The immigration judge issued an order in which he checked
2 the box indicating that he "did not take testimony regarding the Applicant's background and the
3 Applicant's fear of returning to their country of origin or last habitual residence." (*Id.*) Although
4 that form order provides a check box for the immigration judge to indicate whether the Applicant
5 has—or has not— demonstrated a significant possibility that the Applicant could establish
6 eligibility for asylum, those check boxes are left blank. (*Id.*) Further, rather than check the box to
7 affirm DHS's credibility determination, the immigration judge checked the box ordering as
8 follows: "The removal order is vacated and the case is returned to DHS for further proceedings.
9 *See* 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(B)." (*Id.*)

10     Petitioner was placed on the Intensive Supervision Appearance Program ("ISAP"), as a
11 condition of her release. (Doc. Nos. 1 at ¶ 4; 8 at 2; 8-2.) Respondents allege between November
12 5, 2024, and November 4, 2025, Petitioner violated her ISAP conditions ten times. (Doc. Nos. 8
13 at 2; 8-2.) Petitioner alleges she has never violated her ISAP conditions. (Doc. No. 1 at ¶ 4.) On
14 May 25, 2023, Petitioner filed an application for asylum and at some point, began working as a
15 receptionist at an automobile stereo shop. (*Id*. at ¶¶ 3, 9.) Petitioner has no criminal history. (*Id*. at
16 ¶¶ 23, 48.)

17     On November 14, 2025, Petitioner appeared for a regularly scheduled ICE appointment in
18 San Jose, California, and was detained by ICE.[4] (*Id*. at ¶ 4.) Petitioner was then transferred to the
19 California City Detention Center, where she is currently detained. (Doc. Nos. 1 at ¶ 23; 3 at 14.)

20 **B.**   **Procedural Background**

21     On December 22, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. No. 1.)
22 Petitioner raises the following claims against Respondents Christopher Chestnut, Todd M. Lyons,
23 Kristi Noem, and Pam Bondi: (1) violation of her substantive and procedural due process rights
24 under the Fifth Amendment; and (2) unlawful arrest in violation of the Fourth Amendment. (*Id*. at
25 ¶¶ 61–76.)

---

26
27 [4] In her petition, Petitioner alleges she appeared for a regularly scheduled ICE appointment in San Francisco, California on November 21, 2025. (Doc. No. 1 at ¶ 51.) However, based on the court's review of the record, this allegation appears to be inaccurate because the parties' briefing
28 confirms she was detained on November 14, 2025. (Doc. Nos. 8 at 2; 10 at 2.)

That same day, Petitioner filed the pending motion for a temporary restraining order. (Doc. No. 3.) In her pending motion, Petitioner asks the court to order her immediate release from custody.[5] (*Id*. at 2, 15.) Petitioner also asks the court to enjoin Respondents from re-detaining her unless they have provided her with a pre-deprivation hearing before an immigration judge at which Respondents will bear the burden of proving that circumstances have materially changed, rendering Petitioner a danger to the community or a flight risk. (*Id*. at 2, 15–16.) Further, Petitioner asks the court to enjoin Respondents from transferring her outside the Eastern District and to enjoin Respondents from sending her to any place outside of the United States.[6] (*Id*. at 2, 15.)

Later that day, the court issued a briefing schedule on Petitioner's motion and directed Respondents to substantively address whether any provision of law or fact in this case would distinguish it from this court's decision in *Labrador-Prato v. Noem et al.*, No. 25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), *Selis Tinoco v. Noem, et al.,* No. 25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), and other similar cases previously decided by this court, or indicate that the matter is not substantively distinguishable.

On December 29, 2025, Respondents filed a timely opposition to Petitioner's motion.[7] (Doc. No. 8.) Therein, Respondents acknowledge that the statutory analysis in the present case is similar to *Labrador-Prato* and *Selis Tinoco*. (*Id*. at 2.) However, Respondents note "that Petitioner is subject to expedited removal under 8 U.S.C. § 1225(b)(1), not

---

[5] Petitioner also asks the court to to schedule a bond hearing before an immigration judge. (Doc. No. 3 at 15.) Because Petitioner's immediate release is warranted, the court will not address Petitioner's alternative request.

[6] Petitioner provides no authority to support her request to enjoin Respondents from transferring her outside the Eastern District while this action is pending. Because "[t]he court need not make an order preserving its jurisdiction" and Petitioner is being provided immediate release, the court will not address Petitioner's request to enjoin Respondents from transferring her. *Cajina v. Wofford*, No. 25-cv-01566-DAD-AC, 2025 WL 3251083, at *2, n. 1 (E.D. Cal. Nov. 21, 2025) (citing *Y.G.H. v. Trump*, 787 F. Supp. 3d 1097, 1105 (E.D. Cal. 2025)).

[7] In their opposition, Respondents move to dismiss "all [R]espondents other than the Warden of the California City ICE Processing Center." (Doc. No. 8, n. 1.) If Respondents seek to dismiss the other Respondents from this action, they must do so in a properly noticed motion.

4

8 U.S.C. § 1225(b)(2)(A).'"[8] (*Id.*) On December 30, 2025, Petitioner filed a timely reply to Respondents' opposition. (Doc. No. 10.)

## LEGAL STANDARDS

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los*

---

[8] Respondents also request that any further briefing deadlines be held in abeyance pending the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025). (Doc. No. 8 at 2.) The court denies this request. As discussed below, the court finds Petitioner is likely to succeed on the merits of her procedural due process claim and the court will not delay injunctive relief on the prospective chance a pending appeal could affect this outcome.

*Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

## DISCUSSION

**A.     Likelihood of Success on the Merits**

Petitioner argues she is likely to succeed on the merits of her claim that her re-detention, without a hearing, violates her procedural due process rights.[9] (Doc. No. 3 at 8–13.) In opposition, Respondents argue Petitioner is not entitled to a hearing before being re-detained because she is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). (Doc. No. 8 at 5–7.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Individuals subject to mandatory detention are not without due process rights. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091–93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under § 1225(b)(1)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

Here, the parties do not dispute Petitioner was previously released on parole beginning on August 22, 2022, pursuant to 8 U.S.C. § 1182(d)(5). Under § 1182(d)(5)(A), noncitizens may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5); *see Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Release under

---

[9] Because Petitioner's procedural due process claim is dispositive, the court need not address Petitioner's arguments concerning her substantive due process claim. (Doc. No. 3 at 7–8.)

1  § 1182(d)(5) requires a determination that the noncitizen "posed neither "a security risk nor a risk

2  of absconding." *Jennings*, 583 U.S. at 300 (quoting 8 C.F.R. § 212.5(b)); *see Saravia v. Sessions*,

3  280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release [necessarily] reflects a determination by

4  the government that the noncitizen is not a danger to the community or a flight risk."), *aff'd sub*

5  *nom. Saravia v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

6  "Once released, a parolee acquires an interest in [] her continued liberty." *Chavarria v.*

7  *Chestnut*, No. 25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). The

8  court finds the analysis in *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025) to be

9  instructive on this point. In *Pinchi* the court held that:

10  > Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey* [*v. Brewer*], 408 U.S. [471, 482 (1972)].

14  *Pinchi*, 792 F. Supp. 3d at 1032. Following *Pinchi*, a substantial number of district courts in the

15  Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have

16  a liberty interest in their continued release and are entitled to certain due process protections. *See*

17  *Chavarria*, 2025 WL 3533606, at *3 (collecting cases); *Gergawi v. LaRose*, No. 25-cv-03352-

18  JES-MMP, 2025 WL 3719321, at *3–4 (S.D. Cal. Dec. 23, 2025) (collecting cases recognizing

19  that parole under 8 U.S.C. § 1182(d)(5)(A) entitles a noncitizen to certain due process rights

20  under procedural due process); *Benitez v. Hermosillo*, No. 25-cv-02535-BAT, 2025 WL 3763932,

21  at *4 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Babblejit Kaur v. Bondi*, No. 25-cv-03263-

22  KK-MAR, Order, Doc. No. 12 at 5 (C.D. Cal. Dec. 18, 2025) (finding petitioner has a liberty

23  interest in her continued freedom following her parole under 8 U.S.C. § 1182(d)(5)(A)).

24  The court agrees with the findings reached in the cases cited above and concludes that

25  Petitioner is likely to demonstrate that she has a protected liberty interest in her continued release

26  following her parole. Therefore, the court must determine the procedures necessary to ensure any

27  deprivation of that protected liberty interest accords with the Constitution. To make that

28  determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S.

7

319 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (recognizing freedom from detention is "the most elemental of liberty interests"). Petitioner was out of custody for over three years prior to her re-detention. (Doc. No. 1 at ¶¶ 2, 4, 38.) During those three years, Petitioner lived in San Jose, California, where she supported her family as a receptionist at an automobile stereo shop. (*Id*. at ¶¶ 9, 59.) Petitioner has no criminal history, which Respondents do not dispute. (*Id*. at ¶ 23.) Petitioner's continued liberty interest in remaining on release is undermined by her detention. *Doe*, 787 F. Supp. 3d at 1094; *Cf. Marina V.N. v. Robbins*, No. 25-cv-01845-KES-SKO, 2025 WL 3701960, at *4 (E.D. Cal. Dec. 21, 2025) ("Petitioner had been released on her own recognizance for nearly three years prior to her recent detention, and during that time, she worked, became engaged, and attended school. Her re-detention denies her that freedom."). Thus, this factor favors a finding that Petitioner's private interest has been affected by her detention.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Petitioner has been detained for over a month without being provided a bond hearing to evaluate her dangerousness and/or flight risk. (Doc. No. 1 at ¶ 4.) Although Respondents allege in

8

1  their opposition that Petitioner repeatedly violated the terms of her release (Doc. Nos. 8 at 2; 8-2),
2  no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger
3  to the community. *Cf. Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at
4  *11 (N.D. Cal. Sep. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by
5  raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a
6  neutral adjudicator provides a forum to do so."); *see Tesara v. Wamsley*, No. 25-cv-01723-KKE-
7  TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025) (finding "[t]he factual disputes as to
8  Petitioner's alleged parole violations should be resolved at a pre-deprivation hearing, rather than
9  resolved after the fact by this Court"). Under these circumstances, a pre-deprivation hearing
10 before a neutral decisionmaker would have significant value in determining whether Petitioner's
11 detention is necessary. Thus, the second *Mathews* factor favors Petitioner.
12     Turning to the third *Mathews* factor, the court acknowledges the government has an
13 interest in the steady enforcement of its immigration laws but recognizes that the government's
14 interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega
15 v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 787 F. Supp. 3d at 1094. Custody
16 hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*,
17 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the
18 power to take steps toward doing so; but its interest in doing so without [any procedural
19 protections] is low." *Ortega*, 415 F. Supp. 3d at 970.
20     On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the
21 merits that due process requires a bond hearing prior to her re-detention. Therefore, the court
22 finds that Petitioner has established a likelihood of success on the merits of her procedural due
23 process claim.
24 **B.     Irreparable Harm**
25     It is well established that the deprivation of constitutional rights 'unquestionably
26 constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting
27 *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a
28 constitutional right is involved, most courts hold that no further showing of irreparable injury is

9

necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-05785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that she is likely unlawfully detained in violation of her procedural due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *13 (N.D. Cal. Sep. 26, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (N.D. Cal. Sep. 12, 2025)). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)

(finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

Having found that Petitioner is likely to succeed on the merits of her procedural due process claim, the court finds that immediate release is warranted to return to the status quo ante and remedy a constitutional violation. *See Yuhua Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (noting the status quo ante is "the last uncontested status which preceded the pending controversy.") (citations omitted).

Further, in their opposition, Respondents state they do not oppose this court converting Petitioner's motion for a temporary restraining order into a motion for preliminary injunction. (Doc. No. 8 at 2 n. 2.) As noted above, because the standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction, the court will treat Petitioner's motion as seeking both a temporary restraining order and a motion for preliminary injunction.

**D.      Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).

The parties do not address in their briefing whether security is warranted in this case. The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-

SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above,

1. Petitioner Carolina Dussan Pineda's motion for temporary restraining order and preliminary injunction (Doc. No. 3) is GRANTED;

2. Petitioner Carolina Dussan Pineda shall be released immediately from the Respondents' custody with the same conditions she was subject to immediately prior to her detention on November 14, 2025. Respondents shall not impose any additional restriction on her, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered; and

4. This case is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: __January 5, 2026__

_____
Dena Coggins
United States District Judge

12